May it please the Court, Ashley Litwin and Mark Seidels on behalf of Darrell Babcock. The government did not fulfill its burden here, and the District Court did not make a finding that this non-limited warrantless seizure of Babcock's phone was based upon any exception to the warrant requirement. What the government is intending to do here is to extend the Terry principles beyond where they've ever been extended before to a non-limited seizure, a seizure that was not limited in time or in place, and say that that seizure doesn't require probable cause and only requires reasonable suspicion. I guess in fairness though, they, maybe you call it a backup argument or something, but in fairness they say reasonable suspicion, probable cause, we had the latter. Even if we can't get the phone on reasonable suspicion, we had probable cause to suspect that the phone contained evidence of some crime. Yes, Your Honor, they do make that backup argument, and I think it's pretty, in this case there is not probable cause. So explain that to me. Sure. Well, basically, everyone would agree that when Detective Brownton showed up and the other deputies at the scene, they were suspicious. They believed that something was going on and something wasn't right. But that's not enough for probable cause. If you look at Place and Puglisi, in both of those cases, the agents explained, sorry, dropped my earring, in both of those cases, the agents explained that there was suspicious behavior. In Puglisi, I believe, the defendant had a ticket not in his name. He was shaking. He was having trouble breathing when he was discussed with the officer. He had a baggage claim in someone else's name. And the court found that was suspicious. There was reasonable suspicion. He could investigate further, but that wasn't enough for probable cause. And if you look at all the other cases cited to by both the government and us in our brief, in all those cases, there is more. In every single phone, somebody has said that there was child pornography on the phone, or somebody has pointed to, shown in the defendant in a lot of these cases, has pointed to an image, or a third party has said, on this phone, for example, or on this computer, there are images, there's contraband. It's not what happened here, which was just everybody knew something needed to be investigated. Well, let's focus our attention, it would help me at least, if we would focus our attention on our timeline, because there's a call to law enforcement about a disturbance. They arrive, they, Mr. Babcock comes to the door, right? The report is that there had been shouts from a female. He's asked whether there's anyone else there. He falsely denies that there is. Yes, Your Honor. She comes out, and things unfold. And it seems to me that everything that unfolds that the officers know about up into the point where, at first, Babcock shows them his phone, right? And shows them a video on his phone. There's not a problem with anything the officers are doing at that point. It's only much later when he wants the phone back, and they keep it for preservation of evidence, they say, right? And would you agree that everything that the officers know up until that point is what is relevant for determining probable cause? Yes, Your Honor. And just one further fact. Isn't it true that he, without prompting, and I might have missed this in Judge Pryor's analogy, but without prompting, blurted out, I don't know her age, and there is no relationship between us? Well, Your Honor, that is contested. Because if you look at the motion to suppress hearing, Deputy Olson, who is the individual that claims that it was unprompted, she says that as soon as she saw CA walk out of the trailer, she said, what is the nature of your relationship? That was the first question out of her mouth. And then she says he was being evasive, and he didn't answer. And then later, he blurts out that they're not in a sexual relationship. So to say that's unprompted, I think is not the correct characterization. He did make that statement, yes. Whether it's unprompted or not, that's among the facts that the officers are aware of that inform the analysis of whether there's probable cause, right? Yes, Your Honor. That is definitely among the facts. I mean, again, I think all of these facts are suspicious. I think that this officer here, like the officers in place in Puglisi, knew that there was something that needed to be investigated. They know that she spent the night before he asked for the phone back. They've learned that, haven't they? Well, at that point, I don't know if they had learned that she had spent the night. They knew that she was there. She said that she had been there and that they had been partying last night, right? Yes, Your Honor. They knew at that point that they had been out at a party the night before. And this was 8.45 in the morning? It was in the morning, yes, Your Honor. She's scantily clad, right? Well, Your Honor, she's in yoga shorts and a... I've watched the video. I can't see yoga shorts. Well, Your Honor, the deputy of the scene says in the motion to suppress hearing that she was in yoga shorts and admits in the motion to suppress hearing that that is normal for a 16-year-old girl to be wearing. But, Your Honor, yes, I mean, I think there were suspicious aspects at the time that would have... That Detective Broughton should have investigated further, which is why we have no problem with that. That's not what we're contesting. We're saying the facts that were known to the detective at the time were simply that something suspicious was probably going on here and that he needed to investigate further. But the Fourth Amendment requires more. And it's not just probable cause which is required, right? There's also exigent circumstances because this was a warrantless seizure. And this court has held, as the Supreme Court has held on many occasions... Preservation of evidence would be an exigent circumstance, right? Yes, Your Honor. If exigent... If they have probable cause to believe that there is evidence of criminal activity, then they're entitled to hold on to the phone as an exigent circumstance for preservation of warrant. Isn't that right? Yes, Your Honor. The exigent circumstances. But that has to be proven below at the district court. And the government never raised exigent circumstances. They said preservation of evidence. They did, Your Honor. That's just another terminology for exigent circumstance, isn't it? Well, Your Honor, they said preservation of evidence generally, but I would... But the case law... Yes, Your Honor. That is a form of exigent circumstance. So when they say that and the district court says that, aren't we to take that in that light that that's a determination or an argument about exigent circumstance? Well, Your Honor, because it's the government's burden in this case to show the exception to the warrantless requirement, I think more is required. They need to say to the district court that we seize this phone under the exception to the warrant requirement of exigent circumstances. I mean, to say these magic words like that, I mean, it's not enough for them to say, look, we had probable cause to believe that there was evidence of criminal activity and we kept the phone when he asked for it back for preservation of evidence while we sought a warrant. That's not enough to inform the district court that what they're relying upon is that exigent circumstance argument. Your Honor, I don't think it's as simple as them not saying the magic words. I think it's as it being their burden and them affirmatively pleading it. If you look at the motion to suppress, the defense argues that it wasn't seized pursuant to any exception to the warrant, including the exigent circumstances exception, and the government doesn't even respond to that. They never argue in their response. When they say preservation of evidence, I mean, I automatically read that as responsive, as an argument about exigent circumstances. There are different kinds of exigent circumstances argument, preservation of evidence being one of them. I viewed it as a very specific kind of response. No? Well, Your Honor, certainly the exigent circumstances here would have been preservation of evidence, but we would have to know what evidence they were trying to preserve specifically, which is why it is the government's burden to show what it is because, for example, if we're discussing preserving this video. They have probable cause to believe that there's, in fact, an illegal sexual relationship between this adult and this minor. Yes, they do. And that video, at least, is evidence about that. They would inform that determination, then they could preserve it, right? Well, Your Honor, they would have to show that there was exigent circumstances that Babcock would delete the video. It would be not reasonable. Isn't that just common sense? This is a person who has been deceptive from the moment they met him. The first thing he does is deny something that they quickly learn is, in fact, the opposite of what he says, her presence. I mean, they have reason to be concerned about returning a phone to him that he would delete that evidence. But, Your Honor, they had already returned the phone. I mean, Deputy Olson handed it to Babcock. Babcock handed his phone to Deputy Olson to show her the video. She returned it to him. And then he gives it back. And then she gave it back to him, right? No, but he gives it back to her. I'm sorry. He gives it back to her. So if he was going to delete it or refuse to give it back, he didn't, right? He returned it to her. So we know from his actions. It's only the point at which when he's then asking for it back and they say, no, I don't think so. Your Honor, from the record... The question isn't whether... I mean, the question, it seems to me, is really, would they have thought, oh, there's a risk in terms of preservation of evidence if we give it back to him? But then, Your Honor, he then offers to email the video to Detective Broughton. And I understand that typically we don't have to look at alternatives for police, but in the context of seizures, we do. If you look at, in Puglisi, the court says that whether a seizure is reasonable, we have to look to the alternatives open to the police to conduct their investigation. And in this case, because we know from Riley that we have such a strong possessory interest in our phone, that when Babcock... What Riley's concerned about. I mean, Riley talks about preservation of evidence and says, look, it's okay for officers to detain a cell phone for preservation of evidence. It says specifically, and prevent the deletion of evidence, so long as you then seek a warrant to search it. The problem with Riley is that the officers were searching the phone without a warrant, but it seems to me what the officers did here was precisely what the Riley court said officers should do. But, Your Honor, in Riley, the phone was seized incident to arrest, and we have an exception under the warrantless requirement for that, and there was probable cause there, right? I mean, of course, I understand we're arguing that if there was probable cause in this instance, but I think that it is... The point is just that it has to be under one of these exceptions to the warrant requirement, and in Riley, it was search incident to arrest. So I think that is different than here. But when Riley discusses these privacy interests, they go into the import that we have in our phone saying that an alien from above would think that it was one of our appendages. That's how much... I mean, one of the arguments, though, in Riley was about exigent circumstances and preservation of evidence, and the court said, look, Riley had conceded, both sides had conceded, and the court said that that was, I've forgotten, sensible, is I think the word that the court used. It was sensible to do that while you seek a warrant. The problem with Riley was then going beyond that. Yes, Your Honor. I think Riley is saying that we have a heightened privacy interest in our phones above that of our possessory interest, but my argument is only that the facts that they show in Riley show how important cell phones are to us, that people put them in the showers. But, Your Honor, I will use the... You've saved time for rebuttal. You've been on our clock, Ms. Litwin, so you'll save your full time for rebuttal. Thank you, Your Honor. Mr. Rothstein. Good morning, and may it please the court, Josh Rothstein on behalf of the United States and with me at counsel's table is AUSA Carmen Leinberger. The officers in this case had reasonable suspicion justifying the seizure. That's not enough, is it? Well, Your Honor, it is with respect to the initial seizure, and it's different than Puglisi in place because in those cases, what they turned on was whether or not the officers were diligently pursuing their investigation, and in both cases, the court said that there were less intrusive alternatives which the officers could have pursued. In one case, they said you could have had the dog waiting at the airport in LaGuardia rather than waiting for the bag to get there and then taking it over to JFK. In Puglisi, they said you could have arranged for the bag to be searched in Las Vegas rather than having it detained here. In this case, that could not have happened because the witness, the victim in this case, was already on her way to the hospital. But weren't the seizures in both of those cases significantly shorter than the seizure here? Ninety minutes, 140 minutes, right? They were, yes. And as to diligence, I mean, if you think you had, you say you even had probable cause right off the bat, what were you waiting for two days to get a warrant for? Well, I would disagree in the sense that it was in Puglisi where it was 140 minutes. Here, the time between when they had reasonable suspicion, we believe that they had reasonable suspicion and they had probable cause at the scene. But even if you did not believe that they had probable cause until they spoke with the victim at the hospital, it was less than the time in Puglisi, it was less than 140 minutes from the time that they took the phone from the scene and met with the victim. But you're the one who mentioned diligence. I mean, so if they have probable cause at that point, what are you waiting on? Arrest the guy, get the warrant, whatever. Why two days later? As your honor is aware that in several cases they found that up to 25 days is fine. But I mean, I'm just saying as to diligence, I mean, diligence is one of the factors that you're pointing to as to why sort of reasonable suspicion should be enough. So I mean, here we have, we have a two day delay sort of unexplained so far as I can tell. Well, that counts against you. But I get it for probable cause. You've got all the time in the world. But as to reasonable suspicion, you're telling us that we should look to diligence, right? Yes. But your honor, I do not think that they only had reasonable suspicion between the time that they seized the phone and when they got the warrant. By the time that they, even under the most conservative view of the evidence, by the time that they went to the hospital, spoke with the victim, they had probable cause at that point. So really the time period where we're looking at reasonable suspicion is far shorter. And just to look at the probable cause that existed at the scene. How long is that? I mean, so how long is it between the time that Babcock asked for the phone back, the officer says no, and they speak with the victim at the hospital and unquestionably have probable cause then? I understand your argument, not with which I think there's some power that they had probable cause even at the scene. Yes, it was a very short period of time because the officers went from the scene to the hospital and met with her. So they were pursuing the investigation diligently. They weren't pursuing a warrant at that point. They were just pursuing the investigation. That's true. Though, Corporal Browden told the defendant at the scene that they intended to get a warrant. And the testimony was that they would have gotten a warrant anyway, even without the additional confirmation at the hospital. But that does go back to a point that was raised earlier regarding exigent circumstances, which is that the defendant only asked for, only contested when they said, we are going to get a warrant. Then he said, I want my phone back, which is evidence of the fact that he was likely going to delete that information. And as your honor pointed out, the officers in this case did exactly what the Supreme Court instructed officers to do in Riley, where they said officers could have seized and secured the cell phones to prevent the destruction of evidence while seeking a warrant. That's exactly what the officers did here. So is it the key fact that when they said we're going to get a warrant, that he said, I want my phone back? Is that what sort of cabins this case a bit? Because I guess there's some concern that if any suspect in possession of a cell phone automatically gives rise to exigent circumstances, then you've sort of got it in every case, right? I mean, the suspect will necessarily be deemed a risk to delete stuff off of his phone. But I guess it's what you're saying is that in this case, what makes it a little bit different so it doesn't swallow the universe is that this guy affirmatively responded when they said we're going to get a warrant. Oh, no, no, no, no, no. I want my phone back now. Yes. And in addition, as just prior pointed out, there were several times where they caught him in a lie. He already lied about whether or not there was somebody in his cabin, he in his trailer. He lied about when he met the victim. He had said. How quickly do they know that that's a lie at the scene? They know because the victim says I met him the night before to go to a party. He told law enforcement initially the defendant that she came over late in the night, I believe at two thirty in the morning, and he wasn't sure why. So all he tells them at the scene, her date of birth. Yes. There's two things which are clear from the testimony that they learn at the scene. They learn that she's 16 or 17 years old and they learn that she came over there the night before to go to a party with him. And so he had law enforcement already caught him in those two lies. Plus, they caught him in the lie regarding whether or not she was in the trailer. So you take that and he's oddly, you know, on on his own denied a sexual relationship, something that they had not asked about. That's correct. So adding that to the mix, adding that to the three lies and adding that to lying about the presence, we believe that on that, with all of that together, the and would there be anything else that we need to know constitute probable cause to believe that there's an illegal sexual relationship between them? We believe that at the scene that there was more than sufficient evidence to establish probable cause. You had the content of everything that that would support that. Yes, Your Honor. At the scene, they had the content of the call to law enforcement where on the CAD report, it reads stop, stop, stop, indicating that there is some sort of nonconsensual encounter occurring. We have the unprompted statement of the defendant regarding the fact that he's not having a You have the lies of the defendant, including the presence of the victim, her age, when she relied the basis of the relationship. You have the age difference between the two. One is 17 and one is 33. You have the condition of the teen who appears to be under the influence and severely mentally distraught at that point to the effect that they had to call an ambulance to take her to the hospital. You had the content of the trailer. If you recall, the victim came out and she had dried blood on her leg. When law enforcement were given permission to go into the trailer, they found blood on the bed, which would indicate that this 16 year old was in that bed at some point between 2.30 in the morning and when they arrived. And you had her admitting her age and that she had gone to a party with him the night before. And so you have a 16 year old girl going to a party with a 33 year old man. So the way you're describing this, I'm gathering when we're talking about probable cause here, we're talking about probable cause to believe that there is a statutory rape that has been committed. That there has been a sexual encounter between these two individuals. And there was also a fear that the victim had been given drugs or alcohol by the defendant on top of that. That's the I mean, I guess sort of honing in on the likely crime, the litany that you just described, the likely crime at the end of that is statutory rape. It could be. It could be corrupting a minor. There are several state charges which could be in play. So when Broughton or Broughton or however you pronounce it, when he, I think, testifies that the suppression hearing, it wasn't until I got to the hospital and confronted her with the phone and she said, oh, there is a sexual relationship that I had any reason to believe that there was evidence. What does he say? That there were videos of sexual activity between the two on the phone. What exactly is he conceding there? Is he conceding only that I didn't have reason to believe that there was child porn? Or the sexual activity, does that sort of run to statutory rape and corrupting the youth as well? I think that because at the scene he says we are going to get a warrant at that point, he believed that there was probable cause regarding a sexual relationship between the two of them. But what he finds out at the hospital is that there could be or there should be pictures and videos on this phone. So there's the production of child pornography. And one other point which I think may have been lost here, which is that the defendant shows them a video. On that video, the defendant is saying, is heard saying, this is what I have to deal with all the time, indicating that there is an ongoing relationship between them. And unlike in Puglisi and Place where, yes, there was suspicion that maybe the bag contained drugs, here they knew. They knew because they saw on the phone that there was evidence of a crime. So that's why this case is different. And if there are no further questions, I'll rely on the briefs. Thank you. Thank you. Ms. Litwin? Your Honor, we spent, the government spent a lot of its time discussing at the scene whether or not there was probable cause, right? And it's all the factors that are listed. Again, I think that's important to me. Of course. And I understand that. But even Detective Broughton testified at the grand jury, which was brought in to the record at the arraignment, that it was C.A.'s statement which gave him the probable cause to get into the phone. Well, that, I mean, he may say that, but I mean, it's an object of inquiry that we've got to figure out, right? From the point at which, it seems to me, this is something we went over in your opening, the point at which Babcock asks for the phone back and the officers don't give it to him. The question is, well, did they have probable cause then? Yes, Your Honor. And I'm just explaining that I think that until somebody shows what on the phone there was going to be evidence of, there is not probable cause at that point. And it's not just probable cause, again, that's required. It's probable cause and exigency. And I think that that is really important in this case because, again, the only thing If they have probable cause, though, to believe that there is an illegal sexual relationship, which would not be, as I understand, that could be a number of state crimes could be involved in that, not just statutory rape. There could be sexual battery issues. There could be all kinds of sex crimes that involve the age difference here. Would you agree with that? That if there was probable cause, if they believed there was probable cause of a sexual relationship. That it would implicate more than just statutory rape. Of course, Your Honor. And if there is probable cause about that, then wouldn't they have reason to believe that the video that they've already seen is at least some evidence of that relationship? Your Honor, whether or not they believed it would be some evidence of the relationship, and I understand the factors that the government just said as to why they go towards that, I still think that there was no exigency in the deletion of that video. It would have to be something else. Because he offered to email the video. But if that video shows them, especially when he says, this is what I have to deal with all of the time, that suggests a relationship. And then at that point, it's not really much of a leap to think that the phone would contain other evidence of the relationship, right? Well, Your Honor, of course, we could say that it could, but I don't think that that's enough for probable cause and a seizure because we don't even know what the government's worried that they're going to delete at that point. The only thing that there was exigency for at that point is this one video under that analysis. There's at least that. That's another way of looking at it. There's at least that video. But the only, yes, Your Honor, but the only evidence that is brought before the district court, the only finding on exigency that Your Honor is claiming, because the only argument of preservation of evidence at that point before the district court was this one video. And the court has to look at whether or not it was reasonable to believe that Babcock would delete that video and his actions in not only returning the phone, but then in also offering to email that video have to be taken into account for this analysis. Do you agree with the government that it's at the point at which the officers say we're going to get a warrant that he asked for the phone back? Yes, Your Honor. Okay. It is. It is at that point. And I would like to also quickly discuss this idea of creating a cell phone exception. That if we don't go through this analysis to determine that there's actually exigent circumstances in this case of what evidence Babcock would have deleted and whether or not the evidence establishes that he would have deleted it, which again is the government's burden, I think that this court would be creating a cell phone exception to the warrant requirement, saying that probable cause in of itself is enough any time you have a cell phone because someone could delete it. And I think more is required. But I'd like to just take the last minutes just to discuss the sentence in this case. That wasn't addressed in opening. It's in your brief. It's in my brief. Then I will rely on that case. You haven't waived it, but it's not fair to your opponent who did not have an opportunity to respond to that argument. If you don't have anything else, Ms. Litwin, do you have any questions? Thank you very much. Thank you, Your Honor. You have your case. Next case.